UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,
                Plaintiff,                Case No. 1:07-cr-093

-v-

                                      HONORABLE PAUL L. MALONEY

MICHAEL JAMES HINOJOSA,
                Defendant.

_____

OPINION SUPPORTING ORDER DENYING DEFENDANT'S MOTIONS TO SUPPRESS

Defendant Hinojosa filed four motions to suppress evidence on August 29, 2007: (1) Motion to Suppress RE: Warrantless Entry (Dkt. No. 38); (2) Motion to Suppress RE: Illegal Arrest (Dkt. No. 40); (3) Motion to Suppress Evidence Seized Pursuant to a Warrant and Request for a *Franks*[1] hearing (Dkt. No. 42); and (4) Motion to Suppress Statements (Dkt. No. 44). A hearing was held on September 19, 2007. This Court made oral rulings on three of the motions, but afforded parties the opportunities to file additional briefs on the first motion to suppress (Dkt. No. 38). The parties have submitted the additional briefs. This Court has read all the submissions of the parties and has had the benefit of oral argument. This opinion is limited to discussing Defendant's motion to suppress statements made to officers prior to his being advised he was under arrest and before Miranda rights were read to him.

I. BACKGROUND

Agents were conducting an investigation into child pornography when one of the investigators received several movie files over the internet showing a young, post-pubescent female engaging in sexual activities with an adult male. Ultimately, agents determined the movies were sent from a computer used at an apartment in Lansing, Michigan. Agents later determined a person

---

[1]*Franks v. Delaware*, 438 U.S. 154 (1978)

named Michael Hinojosa lived in the apartment and that a person name Michael Hinojosa had an outstanding warrant for his arrest.[2]  Federal agents and local police officers went to the apartment on March 23, 2006.

When agents knocked on the door, a woman who identified herself as Christina Hinojosa answered.  One of the agents identified himself and asked if he could enter the apartment and speak with Michael Hinojosa.  Ms. Hinojosa invited the agents into the apartment and explained that Mr. Hinojosa was asleep.  When Ms. Hinojosa agreed to wake her husband up, the agent asked if the officers could accompany her to the bedroom for safety purposes.  Ms. Hinojosa agreed.

The agents and officers followed Ms. Hinojosa back to the bedroom where Mr. Hinojosa was awakened.  The agents and officers in the room were identified as the police and Mr. Hinojosa was shown a picture of the girl from the pornographic videos for identification.  Mr. Hinojosa identified the girl as his daughter and verified her minor age.  These statements (i.e. identification of the girl as his daughter and her age) are the subject of this opinion.   One officer explained they were investigating an allegation regarding the girl and asked Mr. Hinojosa for permission to search the computer.  Mr. Hinojosa declined the request.  Agents informed Mr. Hinojosa he had an outstanding warrant and placed Mr. Hinojosa under arrest.  At that juncture, he was advised of his Miranda rights.  Mr. Hinojosa was taken to the local police station where he was interviewed.  Mr. Hinojosa admitted to his interviewers that he had approximately 50 sexual encounters with his daughter and that the computer would contain images of his sexual acts with her.  A search warrant was issued for the apartment and the computer later that day.

_____

[2]As explained at the hearing, there may be more than one Michael Hinojosa and that the person for whom the warrant was issued is not Defendant.  This resolution of this question has no bearing on the issue confronted in this motion.

## II.  LEGAL FRAMEWORK

The Fifth Amendment to the United States Constitution protects criminal defendants from being compelled to be a witness against himself or herself.  U.S. Const. amend. V; *Miranda v. Arizona*, 384 U.S. 436, 442 (1966); *United States v. Swanson*, 341 F.3d 524, 528 (6th Cir. 2003). In *Miranda,* the Supreme Court held that a suspect who is subjected to a custodial interrogation must be given certain warnings prior to questioning, or statements made by that suspect may not be admitted into evidence in a criminal trial.  384 U.S. at 478-479.  The obligation to administer those warnings arises only when the restrictions on the suspect's freedom renders him or her in custody or otherwise deprived of freedom in a significant way.  *Oregon v. Mathiason*, 429 U.S. 492, 494 (1977) (per curiam); *Swanson*, 341 F.3d at 528.  The warnings are a constitutional protection. *Dickerson v. United States*, 530 U.S. 428, 438-443 (2000).

Whether a suspect is in custody depends on the objective circumstances of the interrogation, not on the subjective views held by either the interrogating officer or the person questioned. *Stansbury v. California*, 511 U.S. 318, 323 (1994).  *See Berkemer v. McCarty*, 468 U.S. 420, 442 (1984) ("[a] policeman's unarticulated plan has no bearing on the question of whether a suspect was 'in custody' at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation.").  "In determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but 'the ultimate inquiry is simply whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with formal arrest.'" *Stansbury*, 511 U.S. at 322 (alteration in original) (citing *California v. Beheler*, 463 U.S. 1121, 1125 (1983)(per curiam) (quoting *Mathiason*, 429 U.S. at 495)). *See Swanson*, 341 F.3d at 528-529 (holding a court should look to the totality of the

3

circumstances to determine how a reasonable man in the suspect's circumstances would have understood the situation) and *United States v. Harris*, 611 F.2d 170, 172 (6th Cir. 1979) ("the question of custodial interrogation is not dependent on any single factor but must be determined on the basis of the totality of the circumstances").

The Sixth Circuit Court of Appeals has held a court should look at five factors when considering the totality of the circumstances of an investigatory detention. *Swanson*, 341 F.3d at 529. *See also United States v. Robinson*, 217 Fed.Appx. 503, 507 (6th Cir. 2007); *United States v. Flores*, 193 Fed.Appx. 597, 605-606 (6th Cir. 2006). A court should consider whether (1) a reasonable person in the defendant's position would feel free to leave, (2) the purpose of the questioning, (3) whether the place of questioning was hostile or coercive, (4) the length of the questioning, and (5)

> other indicia of custody such as whether the suspect was informed at the time that the questioning was voluntary or that the suspect was free to leave or to request the officers to do so; whether the suspect possessed unrestrained freedom of movement during questioning; and whether the suspect initiated contact with the police ... [or] acquiesced to their requests to answer some questions.

*Swanson,* 341 F.3d at 529 (alteration in original) (quoting *United States v. Crossley*, 224 F.3d 847, 861 (6th Cir. 2000) (quoting *United States v. Salvo*, 133 F.3d 943, (6th Cir. 1998)).

III. ANALYSIS

The totality of the circumstances dictates a finding that the Defendant was not "in custody" or otherwise deprived of freedom in a significant way when he answered the limited questions posed by agents prior to being arrested and read *Miranda* rights. Defendant was awakened by his wife, not the officers. The officers identified themselves as the police before questioning Mr. Hinojosa. Although the officers were in Defendant's bedroom, they did not make a show of force. *See*

4

*Crossley*, 224 F.3d at 862 (finding no custody and noting, among other factors, police never brandished their weapons or made any other show of force).   Courts have generally found a defendant's home is not a hostile or coercive place.   *See Salvo*, 133 F.3d at 950 (collecting cases where courts found defendant was not in custody when interrogated at a home).   The questioning time parameter was very brief in this case.   Defendant was asked only a few questions before being arrested and read his *Miranda* rights.   *See Robinson*, 217 Fed.Appx. at 509 (finding no custody and noting the questioning lasted less than ten minutes) and *Swanson*, 341 F.3d at 530 (finding no custody and noting that questioning occurred for as long as it took defendant's name to clear LEIN). Prior to his arrest, Defendant was never restrained by the police.   However, Defendant was not told he was free to leave or that he could ask the officers to leave.   This last element weighs against the Government's position, but does not require a different result in light of the totality of the circumstances.   See <u>Harris</u>, 611F.2d at 171-172.

This Court finds the totality of the circumstances in this case similar to those in *United States v. Leyva*, No. 99-cr-403, 2000 WL 33363286 (D. Utah, Feb. 25, 2000).   In *Leyva*, the officers approached an apartment on a tip that drugs were there.   *Id.* at *4.   A woman answered the door and invited the officers in after they identified themselves.   *Id.*   The officers learned the person whose name was on the lease was asleep in the bedroom and went to wake him up.   *Id.*   After waking defendant up, one of the officers explained the purpose of their investigation and received defendant's consent to search the apartment.   *Id.*   One officer then asked defendant if there were drugs in the apartment.   *Id.* at 5.   Defendant sought to suppress his admission that there were drugs in the apartment on the basis that he was in custody and had not been read his *Miranda* rights.   *Id.* at 8.   The court held that defendant was not in custody when the admission was made.

Similarly, this Court finds the totality of circumstances readily distinguishable from those in *United States v. Mittel-Carey*, 493 F.3d 36 (1st Cir. 2007).  In *Mittel-Carey*, eight officers arrived at defendant's home at 6:25 a.m. to execute a search warrant for evidence of child pornography.  *Id.* at 38.  Defendant's girlfriend answered the door and the officers entered the house on the basis of the warrant.  *Id.*  Two agents, one carrying an unholstered weapon, entered the bedroom where defendant was and ordered defendant to dress so they could escort him downstairs.  *Id.*  The agents separated defendant from his girlfriend and questioned defendant for one and a half to two hours. *Id.*  Defendant was informed he did not have to answer questions, but he was not arrested or given the *Miranda* warnings.  Over the course of the interrogation, defendant was given permission to do several things around the house, but agents accompanied him on the tasks.  *Id.* at 38-39. The court held defendant was in custody based largely on the level of physical control the agents exercised over defendant during the interrogation.  *Id.* at 40.

## IV.  CONCLUSION

Defendant Hinojosa was not in custody within the meaning of <u>Miranda</u> prior to his arrest when he was questioned by officers in his bedroom on March 23, 2006.  Accordingly, Defendant's motion to suppress (Dkt. No. 38) the statements he made to the officers prior to his arrest is **DENIED.**  An order consistent with this opinion has been contemporaneously filed.


Date:   October 4, 2007                                     /s/ Paul L. Maloney
                                                           Paul L. Maloney
                                                           United States District Judge

6